UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    Civil Action No. 2:19-cv-00417

MOUNTAINEER MANUFACTURING, INC.;
MINING MOTORS, INC.; TANYA
MIDDLETON, a/k/a TANYA BRYANT;
RTM PROPERTIES, LLC; WVTC, LLC;
WORKFORCE WEST VIRGINIA; WEST
VIRGINIA STATE TAX DEPARTMENT;
CECIL WALKER MACHINERY CO.; and
AIRGAS USA, LLC,

      Defendants.


MEMORANDUM OPINION AND ORDER


      Pending are the motions for summary judgment by
plaintiff United States (ECF No. 60), filed May 22, 2020,
defendant Tanya Middleton ("Middleton")(ECF No. 68), filed June
22, 2020, defendant Mining Motors, Inc. ("Mining Motors") (ECF No.
70), filed June 22, 2020, and defendant WVTC LLC ("WVTC") (ECF No.
73), filed June 24, 2020.  Pending also is the United States'
motion for default judgment (ECF No. 62), filed May 22, 2020.
Inasmuch as the facts and legal issues involved in these motions
are necessarily interrelated, this memorandum opinion and order
will dispose of all five motions.

## I.  Background

### A.  Relevant Factual Background

From December 31, 2008 through December 31, 2011, Mountaineer incurred Form 941 federal employment taxes and a civil penalty under 26 U.S.C. § 6721 for failure to file correct information returns.  ECF No. 60-2, at ¶ 9 (Declaration of United States Internal Revenue Officer Eugene Stump).  Balances on these liabilities remain unpaid as of April 20, 2020, in the amount of $154,714.47, as provided by the sworn declaration of Revenue Officer Stump and IRS account transcripts and as set forth in the chart below.  ECF No. 60-3 (IRS Account Transcripts for Mountaineer's Federal Tax Liabilities); ECF No. 60-2, at ¶ 10.  Additionally, Mountaineer remains indebted to the United States for "statutory additions to tax, including interest, accruing after" April 20, 2020.  ECF No. 60-2, at ¶ 11.  The chart below also reflects the dates these liabilities were recorded by notices of federal tax liens recorded,[1] and in four instances refiled, with the Clerk of the County Commission for Fayette County, West

---

[1]    Inasmuch as the 26 U.S.C. § 6721 civil penalty was recorded on the same form as that used to record the five Form 941 federal employment tax assessments and no party has indicated to the contrary, the court treats the United States' interest arising from the 26 U.S.C. § 6721 civil penalty as a "federal tax lien" and collectively refers to the six interests of the United States in Mountaineer's assets and former assets as the "federal tax liens."

2

Virginia.  See id. at ¶ 12; ECF No. 60-4 (Facsimile Copies of IRS'
Automated Lien System Records); ECF No. 60-10 (Notices of Federal
Tax Liens and Notices of Federal Tax Lien Refiles Filed with the
Clerk of the County Commission).

| Tax Type | Tax Period Ending | Assessment Date | Assessment Amount | Unpaid Balance (as of 4/20/20) | Recording Dates |
|---|---|---|---|---|---|
| WT-FICA (Form 941) | 12/31/2008 | 04/06/2009 | $45,451.98 | $39,499.94 | 05/19/2009 05/23/2018 |
| WT-FICA (Form 941) | 03/31/2009 | 06/29/2009 | $39,843.66 | $2,546.41 | 10/22/2009 08/10/2018 |
| WT-FICA (Form 941) | 06/30/2009 | 09/28/2009 | $35,939.60 | $42,882.46 | 10/22/2009 12/06/2018 |
| WT-FICA (Form 941) | 09/30/2009 | 12/28/2009 | $33,730.62 | $61,113.65 | 01/19/2010 03/29/2019 |
| WT-FICA (Form 941) | 12/31/2011 | 04/02/2012 | $45,559.83 | $7,103.60 | 03/30/2015 |
| Civil Penalty § 6721 | 12/31/2009 | 03/03/2014 | $1,200.00 | $1,568.41 | 12/22/2014 |
| | | | Total | $154,714.47 | |

The original filings of the notices of federal tax liens
for the first four Form 941 assessments bear a stamp with the
following address: "Internal Revenue Service P.O. Box 145585
Cincinnati, OH 45250-5885."  ECF No. 60-10, at 1-4.  Based on the
submissions of the United States, it does not appear that the

latter two notices have been refiled, and the originals do not
bear this IRS stamp.  See ECF No. 60-4, at 1-2; ECF No. 60-10.

      In addition to the recorded federal tax liens, fourteen
other lien interests in Mountaineer's property were recorded with
the Clerk of the County Commission between October 11, 2011 and
February 13, 2017.  ECF No. 60-11 (Defendants' Recorded Interests
in Mountaineer Property).  These recorded liens, copies of which
have been submitted to the court at ECF No. 60-11, are as follows:

| Recording Date | Recording Book-Page | Interest Description | Amount |
|---|---|---|---|
| 10/11/2011 | 32-262 | WorkForce West Virginia tax lien for unemployment compensation contributions for the tax period ending 6/30/2011 | $2,310.36 with $95.26 interest as of 10/3/2011 |
| 3/4/2013 | 34-187 | WorkForce West Virginia tax lien for unemployment compensation contributions for the tax period ending 12/31/2012 | $1,645.98 with $23.26 interest as of 3/15/2013 |
| 10/9/2014 | 35-693 | West Virginia State Tax Department tax lien for withholding for the tax period ending 3/31/2014 | $3,928.00 with $208.44 interest as of 10/6/2014 |
| 11/13/2014 | 36-197 | West Virginia State Tax Department tax lien for withholding for the tax period ending 6/30/2014 | $4,124.00 with $153.50 interest as of 11/5/2014 |
| 12/9/2014 | 36-216 | WorkForce West Virginia tax lien for unemployment compensation contributions for the tax period ending 9/30/2014 | $2,717.08 with $105.82 interest as of 12/18/2014 |

| Recording Date | Recording Book-Page | Interest Description | Amount |
|---|---|---|---|
| 3/16/2015 | 36-467 | West Virginia State Tax Department tax lien for withholding for the tax period ending 9/30/2014 | $3,823.00 with $115.89 interest as of 1/5/2015 |
| 6/11/2015 | 36-562 | West Virginia State Tax Department tax lien for withholding for the tax period ending 12/31/2014 | $3,419.00 with $152.87 interest as of 6/5/2015 |
| 7/6/2015 | 36-628 | WorkForce West Virginia tax lien for unemployment compensation contributions for the tax period ending 3/31/2015 | $5,377.94 with $138.70 interest as of 7/15/15 |
| 8/10/2015 | 36-668 | West Virginia State Tax Department tax lien for withholding for the tax period ending 3/31/2015 | $2,540.00 with $94.84 interest as of 8/5/2015 |
| 8/31/2015 | 36-688 | WorkForce West Virginia tax lien for unemployment compensation contributions for the tax period ending 6/30/2015 | $2,316.58 with $31.97 interest as of 9/11/2015 |
| 11/12/2015 | 37-217 | West Virginia State Tax Department tax lien for withholding for the tax period ending 6/30/2015 | $2,391.00 with $90.10 interest as of 11/5/2015 |
| 5/17/2016 | 64-351 | Abstract of judgment in favor of Cecil Walker Machinery Co. | $9,489.36 with interest accruing at 7%, plus costs |
| 12/28/2016 | 65-247 | Abstract of judgment in favor of Airgas USA, LLC | $42,799.00 with interest accruing at 7% |
| 2/13/2017 | 38-383 | WorkForce West Virginia tax lien for unemployment compensation contributions for the tax period ending 9/30/2015 | $50.00 with $10.70 interest as of 2/23/2017 |

Mountaineer presently owns, or at one time owned, four sets of properties located in Smithers, West Virginia, hereinafter referred to as: "the Mining Motors Properties," "the Middleton Properties," "Johnson Lot Nos. 62-64," and "Oakland Front Half Lot No. 8." The Mining Motors Properties include, as the first set: Parcel 1, Parcel 2, Parcel 4, and Parcel 5, as described by deed dated November 28, 1986, to grantee defendant Mountaineer, ECF No. 60-6; and Tract Two, as described by deed dated November 21, 1988, to grantee Mountaineer, ECF No. 60-7. The Middleton Properties include, as the second set: Parcel 3, as described by deed dated November 28, 1986, to grantee Mountaineer, ECF No. 60-6; and Tract One, as described by deed dated November 21, 1988, to grantee Mountaineer, ECF No. 60-7.

Johnson Lot Nos. 62-64 include Tract I (Lot No. 62 of the W.R. Johnson Coal Company Subdivision) and Tract II (Lot Nos. 63-64 of the W.R. Johnson Coal Company Subdivision), as described by deed dated May 7, 1996, to grantee Mountaineer, constituting the third set. ECF No. 60-8 (May 7, 1996 Deed). Oakland Front Half Lot No. 8 includes "LOT Front ½ of 8 SEC B Oakland SD, Map 7, Parcel 106, Account No. 06171947," as described by deed dated April 3, 2012, to grantee Mountaineer, constituting the fourth set. ECF No. 60-9 (April 3, 2012 Deed).

6

The parties agree that Mountaineer failed to pay state ad valorem real property taxes on these four sets of property, whereupon state ad valorem tax liens pertaining to the properties became the subjects of a sale by the Fayette County Sheriff on November 10, 2016.  See ECF No. 48, at ¶¶ 9, 20, 30 (United States' Proposed Stipulations of Facts); ECF No. 49, at 2-3 (Mining Motors' Exceptions and Additions to the Plaintiff's Proposed Stipulation of Facts); ECF No. 50, at 2, 4 (Middleton's Exceptions to the Plaintiff's Proposed Stipulation of Facts and Middleton's Proposed Stipulation of Facts); ECF No. 51 (West Virginia State Tax Department's Response to the United States of America's Proposed Stipulations of Facts).

The United States has acknowledged the contention of Middleton that it, "did not file its liens with the Office of the Sheriff of Fayette County, West Virginia" prior to the sheriff's sale of the ad valorem tax liens.  ECF No. 75-1, at 1 (United States' Objections and Responses to Defendants' Additional Statements of Undisputed Facts).  However, as will be shown, the notices of the federal tax liens need not have been filed with the sheriff; rather they were previously and properly filed with the Clerk of the County Commission for Fayette County, West Virginia.

At the sheriff's sale, WVTC purchased the state tax ad valorem lien associated with the Mining Motors Properties for $5,307.29, the state ad valorem tax liens associated with the Middleton Properties for $1,909.31, and the state ad valorem tax lien associated with Oakland Front Half Lot No. 8 for $458.61. See ECF No. 60-12 (April 1, 2018 Tax Deed Conveying the Mining Motors Properties) (noting the sale of the state ad valorem tax lien on the Mining Motors Properties to WVTC); ECF No. 60-13, at 1-3 (Three Separate April 1, 2018 Tax Deeds Conveying the Middleton Properties) (noting the sale of the state ad valorem tax liens on the Middleton Properties to WVTC); ECF No. 60-14 (April 1, 2018 Tax Deed Conveying Oakland Front Half Lot No. 8) (noting the sale of the state ad valorem tax lien on Oakland Front Half Lot No. 8 to WVTC).[2]  The state ad valorem tax lien on Johnson Lot Nos. 62-64 was not purchased during the November 10, 2016

---

[2]  As indicated by the parentheticals above, the ad valorem tax liens on what are collectively referred to herein as the Middleton Properties were sold to WVTC by three separate sales, certificate of sale numbers 2016-S-000000210, 2016-S-000000212, and 2016-S-000000213, during the November 10, 2016 sheriff's sale. ECF No. 60-13.  The ad valorem tax lien on the Mining Motors Properties and the ad valorem tax lien on Oakland Front Half Lot No. 8 were sold to WVTC by single sales, certificate of sale numbers 2016-S-000000209 and 2016-S-000000211, respectively.  ECF No. 60-12; ECF No. 60-14.

sheriff's sale, and according to the United States, Johnson Lot Nos. 62-64 remain titled to Mountaineer.  See ECF No. 48, at ¶ 40.

On behalf of the IRS, Revenue Officer Eugene Stump sent a letter dated December 22, 2017, to WVTC regarding the November 10, 2016 sheriff's sale.  ECF No. 60-5 (December 22, 2017 IRS Letter to WVTC).  The letter stated that "[i]t recently came to the attention" of the IRS that WVTC had purchased the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8, "at a non-judicial sale on November 10, 2016."  Id. The letter continued:

> Please be advised that the Internal Revenue Service has an interest in these properties, having filed Notices of Federal Tax Liens on 5/19/2009, 10/22/2009, 10/22/2009, 1/19/2010, 12/22/2014, and 3/30/2015.  The [S]ervice was entitled to notice of the sale twenty-five days in advance pursuant to Internal Revenue Code section 7425(c)(1), and if such notice had been issued, and several other requirements were met, the Service's liens would be discharged if it chose not to exercise its right of redemption.  However, because such notice was not provided in accordance with federal law, the Service does not have a right of redemption, and the liens will continue to encumber the property you purchased.  The Service intends to exercise its rights with respect to the properties you purchased and is currently moving toward the filing of a suit to foreclose the federal tax liens.

Id.

In January 2018, the West Virginia State Auditor's Office County Collections Division sent notices regarding the November 16, 2016 sheriff's sale of the tax liens on the Mining

9

Motors, Middleton, and Oakland Front Half Lot No. 8 properties to the IRS on WVTC's behalf.  ECF No. 60-15 (Notice Concerning the Sale of Tax Lien on the Mining Motors Properties); ECF No. 60-16 (Three Notices Concerning the Sales of the Tax Liens on the Middleton Properties); ECF No. 60-17 (Notice Concerning the Sale of the Tax Lien on Oakland Front Half Lot No. 8).  Although the notices themselves do not bear dates, the certified mail records produced by the United States indicate that all of them were received by the IRS at PO Box 145595 Stop 8420G, Cincinnati, Ohio 45250-5595 on January 16, 2018.  ECF No. 60-15; ECF No. 60-16; ECF No. 60-17.  Each notice indicated that it was being sent to, <u>inter alia</u>, the following entities in addition to the IRS: "Mountaineer Manufacturing, Inc., Airgas USA LLC C/O Ryan S Marsteller Esquire, Cecil Walker Machinery Company C/O Burton Neil & Associates, WorkForce West Virginia Legal Section (5107), [and the] State of West Virginia State Tax Department Compliance Division AMU."  ECF No. 60-15, at 2; ECF No. 60-16, at 2, 6, 10; ECF No. 60-17, at 2.

The notices informed the IRS as well as these other parties that inasmuch as WVTC had purchased the tax liens on the Mining Motors Properties, the Middleton Properties, and Oakland Front Half Lot No. 8 during the November 16, 2016 sheriff's sale, deeds to the properties would issue to WVTC on or after April 1, 2018, unless they were redeemed on or before March 31, 2018.  ECF

10

No. 60-15; ECF No. 60-16; ECF No. 60-17.  The notices proceeded to outline the costs of redemption for each tax lien.  ECF No. 60-15; ECF No. 60-16; ECF No. 60-17.

One major issue is whether these notices were sent to the appropriate IRS address.  IRS Publication 786, entitled "Instructions for Preparing a Notice of Nonjudicial Sale of Property and Application for Consent to Sale," states that notices of nonjudicial sales should be sent to the "Collection Advisory Group Manager (for the geographical area where the Notice of Federal Tax Lien was filed.  Use Publication 4235, Collection Advisory Group Addresses, to find the Collection Advisory office where you would submit your documents.)"  ECF No. 60-22, at 2 (IRS Publication 786, Instructions for Preparing a Notice of Nonjudicial Sale of Property and Application for Consent to Sale (Rev. 5-2016) (emphasis omitted)).

The versions of IRS Publication 4235, entitled "Collection Advisory Group Numbers and Addresses," effective on the date of the sheriff's sale as well as the date the notices were sent to the IRS in turn indicate that 550 Main St., Room 3411 Cincinnati, OH 45202 is the address of the Collection Advisory Group associated with West Virginia.  ECF No. 60-23, at 9-10 (IRS Publication 4235 (Rev. 10-2016)); id. at 13-14 (Publication 4235,

11

Collection Advisory Group Numbers and Addresses (Rev. 11-2017)).
Publication 4235 likewise states that inquiries for "Foreclosure
of property – Non-judicial Sales" pursuant to Publication 786
should be directed to the "Advisory Office for state where the
[federal] notice of lien is filed," which, as indicated above,
would be 550 Main St., Room 3411 Cincinnati, OH 45202.  Id. at 9,
13.

        Publication 4235 additionally provides the following
address for the IRS' Centralized Lien Operation, P.O. Box 145595,
Stop 8420G, Cincinnati, Ohio 45250-5595, i.e., the office stamped
on four out of the six notices of federal tax liens and the office
to which the State Auditor sent notices concerning redemption of
the Mining Motors Properties, Middleton Properties, and Oakland
Front Half Lot No. 8.  Id.  However, the publication indicates
that the Centralized Lien Operation is the proper address for
inquiries concerning: "General lien questions, requests for lien
payoff balance"; "Release of Federal Tax Lien"; and "Withdrawal of
Notice of Federal Tax Lien - after lien released."  Id.

        The IRS did not redeem the properties, and on April 1,
2018, the State Auditor issued tax deeds conveying the Mining
Motors Properties, Middleton Properties, and Oakland Front Half
Lot No. 8 to WVTC.  ECF No. 60-12; ECF No. 60-13; ECF No. 60-14.

12

On July 11, 2018, WVTC conveyed the Mining Motors Properties to Mining Motors by quit claim deed for $40,000.00.  ECF No. 60-18 (July 11, 2018 Deed).  On November 16, 2018, WVTC conveyed Oakland Front Half Lot No. 8 by quit claim deed to defendant RTM Properties, LLC ("RTM") for $13,534.13.  ECF No. 60-19 (November 16, 2018 Deed).

On February 21, 2019, WVTC conveyed the Middleton Properties by quit claim deed to Middleton for approximately $30,000.00.[3]  ECF No. 60-20 (February 21, 2019 Deed).  Middleton has submitted an affidavit stating that she paid $15,000.00 in cash with the balance "secured by a purchase money promissory note, secured by a purchase money deed of trust."  ECF No. 68-3, at ¶ 5 (Affidavit of Tanya Middleton).

Middleton further avers that at the time she purchased the Middleton Properties, Oak Hall, an owner of WVTC, assured her

---

[3]   It appears that this deed conveys not only what are referred to herein as the Middleton Properties, but also "Lot 78 Sec G Old Oakland SD," certificate of sale number 2016-S-000000214.  ECF No. 60-20, at 1.  Inasmuch as this specific lot is not at issue in this action but was part of the consideration for Middleton's $30,000.00 purchase, the court concludes for the purposes of this opinion that the sale of the properties at issue, i.e., the Middleton Properties, was worth "approximately" $30,000.00.

that the properties were "free of all claims or liens."[4]  Id. at ¶ 6.  Middleton also avers that the Middleton Properties were unimproved at the time she purchased them from WVTC and that she and her husband have "expended more than $241,000" to construct a vehicle collision repair business on the properties, which they presently operate.  Id. at ¶¶ 3, 4, 7.  She has produced an itemized list of what she, in her briefing on summary judgment, claims are "construction costs" totaling $232,300.00.[5]  ECF No. 68-2 (Itemized List); ECF No. 69, at 2 (Middleton's Memorandum in Support of Summary Judgment and Response to the United States' Motion for Summary Judgment).

   B.   Relevant Procedural Background and the Pending Motions

     The United States filed this action on May 29, 2019.  ECF No. 1 (Complaint of the United States).  In addition to Mountaineer, the party which failed to pay the assessments that resulted in the federal tax liens at issue, the United States

---

[4]   It is not clear from the affidavit whether this assurance was oral or in writing.  As stated, however, the deed conveying the properties was a quit claim deed, and it may be the case that the representations were made orally.

[5]   The court notes that the itemized list itself is unlabeled and difficult to identify apart from Middleton's representations in her briefing.  It merely recites various activities and corresponding costs, e.g., "Concrete Removal/Haul with Disposal $5,000," without any further context.  ECF No. 68-2.  Moreover, Middleton's affidavit does not mention the list.

named Mining Motors, Middleton, RTM, WVTC, WorkForce West Virginia, the West Virginia State Tax Department, Cecil Walker Machinery Co. ("Cecil Walker"), and Airgas USA, LLC ("Airgas") as defendants under 26 U.S.C. § 7403(b) inasmuch as they hold or may claim interests in the real property at issue.  Id. at ¶¶ 4-12.

Count I of the complaint, "Reduce Assessments to Judgment," seeks a court order that: reduces the unpaid balances of Mountaineer's federal tax liabilities, plus statutory additions and interest accruing thereon until those liabilities are paid in full, to a judgment; awards the costs of prosecuting this action to the United States; and "[g]rant[s] such other and further relief as the Court deems just and proper."  Id., at ¶¶ 21-22. Count II, "Foreclose Tax Liens on the Mining Motors Properties," asserts that "[t]he Internal Revenue Service did not receive proper and timely notice pursuant to 26 U.S.C. § 7425 and Treas. Reg. § 301.7425-3(a) of the" November 10, 2016 sheriff's sale, and thus, "[t]he sale did not discharge the federal tax liens that encumbered Mountaineer's interest in the Mining Motors Properties."  Id. at ¶ 29.  Count II continues:

>As the holder of valid and subsisting federal tax liens
>that encumber the Mining Motors Properties, the United
>States is entitled to have its tax liens foreclosed and
>the Mining Motors Properties sold.  The proceeds of such
>sale should be distributed: to pay the costs of sale; to
>the United States to partially satisfy the unpaid
>federal tax liabilities of Mountaineer; and to other
>parties consistent with the relative priorities of their
>claims.

**Id.** at ¶ 35.

With regard to Count II, the United States prays for the following relief: a determination and adjudgment that "the United States holds valid and subsisting tax liens by virtue of the assessments described . . . above, on all property and rights to property owned or acquired by Mountaineer after the date of assessments, including its prior interest in the Mining Motors Properties"; a judgment that "federal tax liens encumbering the Mining Motors Properties be foreclosed and the properties be sold according to law free and clear of any right, title, lien, claim or interest of any of the parties herein, including Mining Motors, Inc." with the proceeds of the sale to be distributed "in accordance with the rights of the parties to be determined herein, with the amounts attributed to the interest of Mountaineer to be paid to the United States and applied against the tax liabilities and penalties" described above; an order "that any of the named Defendants who do not appear in this matter forfeit any rights they may have to the Mining Motors Properties, and any claim they

16

may have to proceeds from the sale of these properties"; an award of costs of prosecuting this action to the United States; and "such other and further relief as the Court deems just and proper."  Id.

Count III, "Foreclose the Tax Liens on the Middleton Properties," and Count IV, "Foreclose the Tax Liens on Oakland Front Half Lot No. 8," include similar allegations as to these properties, now owned by Middleton and RTM, respectively, and request the same relief as the United States prays for with respect to the Mining Motors Properties.  Id. at ¶¶ 36-60.  Count V, "Foreclose Tax Liens on Johnson Lot Nos. 62-64," differs from Counts II-IV in that the United States alleges, "The Fayette County Sheriff attempted to sell county tax liens on Johnson Lot Nos. 62-64, but was unsuccessful."  Id. at ¶ 65.  Accordingly, the United States prays for the same relief with respect to Johnson Lot Nos. 62-64 and Mountaineer, which allegedly holds title thereto, as it does in Claims II-IV with respect to the Mining Motors Properties and Mining Motors, the Middleton Properties and Middleton, and Oakland Front Half Lot No. 8 and RTM.  Id. at ¶ 67.

The West Virginia State Tax Department filed an answer on August 8, 2019, as well as an amended answer on August 9, 2019, to which it attached copies of the six notices of tax liens

17

against Mountaineer for withholding described in the chart above.
ECF No. 6 (Answer of the West Virginia State Tax Department); ECF
No. 7 (Amended Answer of the West Virginia State Tax Department);
ECF No. 7-1 (Notices of Withholding Tax Liens).  WVTC filed its
answer on August 13, 2019.  ECF No. 8 (Answer of WVTC).

Middleton initially filed an answer to the complaint on
August 28, 2019, praying for the dismissal of Count III,
attorney's fees, and costs.  ECF No. 18 (Answer and Crossclaim of
Tanya Middleton).  Notably, her answer states as follows:

> [S]ince [Middleton's] acquisition of the "Middleton
> Properties" (COUNT III) she has made substantial
> improvements thereto at a cost exceeding Two Hundred
> Thousand Dollars ($200,000) and has thereby
> substantially increased the value thereof. Accordingly,
> if the Plaintiff were to prevail in this action as to
> the Middleton Properties, the Plaintiff would be
> unjustly enriched and accordingly this Defendant would
> be entitled to and seeks recovery of said sums directly,
> or by way of set off from the Plaintiff.

Id. at ¶ 23.  The pleading also includes a crossclaim against WVTC
for fraud relating to its alleged representations and assurances
to her and her husband, John Middleton, "that the property to be
conveyed to her was free of all liens and encumbrances."  Id. at
6.

Mining Motors filed its answer on September 5, 2019, in
which it asserted a combined declaratory judgment crossclaim
against all named defendants and counterclaim against the United

States to quiet title to the Mining Motors Properties conveyed to it by WVTC on June 11, 2018.  ECF No. 19, at 8-12 (Answer, Counterclaim, and Crossclaim of Mining Motors).  In the consolidated crossclaim and counterclaim, Mining Motors alleges that Mountaineer, as the owner of the Mining Motors Properties prior to the sheriff's sale, and the United States, Airgas, Cecil Walker, the West Virginia State Tax Department, and WorkForce West Virginia, as lienholders, were entities entitled to notice of their rights to redeem the properties under W. Va. Code § 11A-3-1, et seq., and "who, under W. Va. Code § 11A-4-4 have the right to institute a civil action to attempt to set aside" the deed from WVTC to Mining Motors.  Id. at 10.

Mining Motors seeks to clear the cloud on its title and requests: that Mountaineer and the lienholders "be required to set forth the nature of any claims they may have against" the Mining Motors Properties such that all claims may be resolved by the court; a declaration, order, and adjudgment that "Mining Motors is entitled to the quiet and peaceful possession" of the Mining Motors Properties and that Mountaineer and the lienholders, or "any person claiming under them," do not have "any claim, estate, right, title, lien, or interest in or to" the Mining Motors Properties; an order permanently enjoining these parties from "asserting any claim, estate, right, title, lien, or interest in

or to" the Mining Motors Properties and that title to such properties are held by Mining Motors as against these parties; and "such other and further relief as the Court may deem just and proper." Id. at 11-12.

WVTC filed an answer to Middleton's crossclaim on September 18, 2019.  ECF No. 22 (Answer of WVTC to Middleton's Crossclaim).  Middleton thereafter filed an amended answer, which incorporates by reference the allegations, defenses, and crossclaim against WVTC of her initial pleading.  ECF No. 23 (Amended Answer of Middleton with Crossclaims and Counterclaim). This amended pleading adds allegations and defenses as well as an additional combined counterclaim and crossclaim.  Id.  With language nearly identical to the combined crossclaim and counterclaim asserted by Mining Motors, Middleton's combined crossclaim and counterclaim seeks a declaratory judgment to quiet title to the Middleton Properties as against the United States, Mountaineer, Airgas, Cecil Walker, the West Virginia State Tax Department, WorkForce West Virginia, and any persons asserting claims against the Middleton Properties under such parties.  Id. at 3-6.

On May 13, 2020, the United States filed a request with the Clerk of this court pursuant to Federal Rule of Civil

Procedure 55(a) for the entry of default against Mountaineer, RTM, Airgas, Cecil Walker, and WorkForce West Virginia, all of whom were served but who have not appeared in this action. See ECF No. 56 (Request of the United States for Entry of Default); accord ECF No. 10 (Proof of July 18, 2019 Service on Mountaineer); ECF No. 11 (Proof of July 23, 2019 Service on Cecil Walker); ECF No. 13 (Proof of July 23, 2019 Service on RTM); ECF No. 14 (Proof of July 22, 2019 Service on WorkForce West Virginia); ECF No. 15 (Proof of July 19, 2019 Service on Airgas). The Clerk entered default against these parties on May 19, 2020. ECF No. 59 (Clerk's Entry of Default).

The United States thereafter filed a motion for default judgment on May 22, 2020. ECF No. 62 (Motion for Default Judgment). This motion requests default judgment against Mountaineer pursuant to Rule 55(b)(1) for the sum certain of $154,714.47, "plus statutory additions to tax and interest according to law." ECF No. 63, at 4-5 (Memorandum in Support of Default Judgment). The motion also requests default judgment against Mountaineer, RTM, Cecil Walker, Airgas, and WorkForce West Virginia with regard to their interests or potential interests in Oakland Front Half Lot No. 8 and Johnson Lot Nos. 62-64. Id. at 5-10. Specifically, the United States contends that federal tax liens have continued to encumber Oakland Front Half Lot No. 8

21

after the ad valorem tax lien on it was sold at the sheriff's sale and that Johnson Lot Nos. 62-64 maintain the federal tax liens inasmuch as no ad valorem tax lien on it was sold at the sheriff's sale and Mountaineer maintains title to these lots.  Id. at 5-8. The United States asks that the court foreclose the federal tax liens on Oakland Front Half Lot No. 8 and Johnson Lot Nos. 62-64, order that the properties be sold, and, "apply the proceeds to satisfy or partially satisfy Mountaineer's tax debt."  Id. at 8.

The United States asserts that it has first priority liens on Oakland Front Half Lot No. 8 and Johnson Lot Nos. 62-64 under the "first in time is the first in right" principle, which it claims is applicable to the priority of all tax liens in this action.  Id. at 9-10.  The plaintiff claims that $146,042.46 of Mountaineer's federal liabilities arise from Form 941 federal employment taxes assessed and recorded prior to any of the non-appearing parties' interests in Oakland Front Half Lot No. 8 and Johnson Lot Nos. 62-64 arose.  Id. at 9-10.  The plaintiff also contends that the "West Virginia tax lien sales process" extinguished the interests of Mountaineer, Cecil Walker, Airgas, and WorkForce West Virginia in Oakland Front Half Lot No. 8.  Id. at 10 n. 3.

The Clerk of this court entered default judgment against Mountaineer for $154,714.47 plus statutory interest on June 18, 2019.  ECF No. 67 (Default Judgment).  The default judgment arguments pertaining to lien encumbrance, foreclosure, and priority remain pending.

The United States also filed a motion for summary judgment on May 22, 2020.  ECF No. 60 (United States' Motion for Summary Judgment).  The United States argues that it is entitled to summary judgment with regard to the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8 inasmuch as: federal tax liens on these properties arose prior to the sheriff's sale; the West Virginia ad valorem tax lien process qualifies as a nonjudicial sale under 26 U.S.C. § 7425(b); the United States did not receive notice of the nonjudicial sales as required by statute, and the federal tax liens on these properties subsist.  ECF No. 61, at 7-14 (Memorandum in Support of United States' Motion for Summary Judgment).  The United States also claims that its liens still encumber Johnson Lot Nos. 62-64 for the reasons given in support of the motion for default judgment. Id. at 14.

The United States argues that foreclosure on its federal tax liens encumbering the four sets of properties is appropriate and that the proceeds from the court ordered sales should be distributed "according to the parties' relative interests and priorities."[6] Id. at 15.  The United States claims, once again, that it has priority since $146,042.46 of Mountaineer's liabilities stem from Form 941 federal employment taxes assessed and recorded prior to the time any of the interests of other parties arose.  Id. at 16-17.  The United States contends that the interests of Cecil Walker, Airgas, WorkForce West Virginia, and the West Virginia State Tax Department in the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No.

---

[6]   The United States' motion for summary judgment overlaps with its motion for default judgment to some extent insofar as they both seek foreclosure on liens pertaining to Oakland Front Half Lot No. 8 and Johnson Lot Nos. 62-64.  The court notes, however, that the motions are not entirely coextensive with regard to these two sets of properties.  The motion for default judgment ostensibly pertains to the parties pertaining to the parties who have not appeared in this action, namely, Mountaineer, RTM, Cecil Walker, Airgas, and WorkForce West Virginia.  See ECF No. 63.  In addition to those parties, the motion for summary judgment involves two other parties, WVTC and the West Virginia State Tax Department, which have appeared in this action.  See ECF No. 61.

24

8, "were extinguished through the West Virginia tax lien process."[7]  Id. at 16-17 n. 9.

Middleton filed a motion for summary judgment on June 22, 2020, with the corresponding memorandum functioning as support for her motion and a response to the United States' motion for summary judgment.  ECF No. 68 (Middleton's Motion for Summary Judgment); ECF No. 69.  Middleton argues that the federal tax liens no longer encumber the Middleton Properties inasmuch as: the sheriff's sale was not a nonjudicial sale under 26 U.S.C. § 7425(b) and the notice requirements thereof did not apply; the sheriff's sale was conducted according to W. Va. Code § 11A-3-1, et seq., and the IRS did not receive notice other than publication notice prior to the sale since it did not file a notice of its liens with the Office of the Sheriff of Fayette County as required by W. Va. Code § 11A-3-2(b);[8] the United States received notice of its right to redeem the Middleton Properties with regard to the state ad valorem tax liens as required by state law and the United

---

[7]  Presumably the United States believes that Mountaineer's interest in these properties was also extinguished through this process as argued in the context of the motion for default judgment, but the United States does not so state with respect to the motion for summary judgment.

[8]  Middleton does not dispute that the United States did, however, file notices of its federal tax liens with the Clerk of the County Commission as required by West Virginia law.  See W. Va. Code § 38-10-1.

States Constitution; and assuming, <u>arguendo</u>, the sheriff's sale was a nonjudicial sale, the facts of this case do not accord with Congress' stated purpose for the notice requirement of 26 U.S.C. § 7425(b).  ECF No. 69, at 2-6.  With regard to the argument that a nonjudicial sale did not occur, Middleton specifically asserts that the sheriff's sale only sold the state's ad valorem tax liens on the Middleton Properties and that WVTC's assumption of title after the redemption period constituted a forfeiture.  <u>Id.</u> at 3-5.

Notwithstanding these issues concerning the subsistence of the IRS' liens, Middleton also contends that her interests in the Middleton Properties are superior to those of the United States inasmuch as she can trace her title to the state's ad valorem tax liens, which she claims had "superpriority" under 26 U.S.C. § 6323(b)(6).  <u>Id.</u> at 7-8.  Middleton also indicates that should the United States be granted summary judgment:

> before any execution of its liens may occur, the Court must adjudicate her claims regarding recovery against the proceeds of sale or by offset due to unjust enrichment of the Government by virtue of the value added to The Middleton Properties by her.  Likewise, this Court will be required to adjudicate Plaintiff's cross claim against WVTC LLC.

<u>Id.</u> at 8-9.

Mining Motors filed a motion for summary judgment on June 22, 2020, and contemporaneously filed a separate response to the United States' motion for summary judgment.  ECF No. 70 (Mining Motors' Motion for Summary Judgment); ECF No. 72 (Mining Motors' Response to the United States' Motion for Summary Judgment).  Like Middleton, Mining Motors contends that the sheriff's sale of the ad valorem tax liens did not constitute a nonjudicial sale for the purposes of 26 U.S.C. § 7425(b) and that no notice pursuant thereto was required.  ECF No. 71, at 4-7 (Mining Motors' Memorandum in Support of Summary Judgment).; ECF No. 72, at 3-4.  Mining Motors asserts that the United States, "along with all of the others entitled to redeem the delinquent [ad valorem] taxes," received notice regarding redemption as required by state law, whereupon the liens were extinguished and a tax deed issued when no redemption occurred.  ECF No. 71, at 2-4; accord ECF No. 72, at 1-3.  Mining Motors also echoes Middleton's 26 U.S.C. § 6323(b)(6) superpriority argument that notwithstanding the issue of whether the sheriff's sale of the ad valorem tax liens was a nonjudicial sale, its title to the Middleton Properties is traceable to the state's ad valorem tax lien thereon, giving it an interest in the properties superior to that of the United States.  ECF No. 71, at 7-8; ECF No. 72, at 4-6.

27

WVTC filed a motion for summary judgment on June 24, 2021, with a corresponding one-page memorandum in support thereof. ECF No. 73 (WVTC's Motion for Summary Judgment and Memorandum in Support).  WVTC joins in the motions for summary judgment filed by Middleton and Mining Motors inasmuch as it believes that these parties' arguments support summary judgment for WVTC.  Id.  WVTC offers no briefing with regard to Middleton's assertion that her fraud crossclaim against it must be resolved should the United States be entitled to judgment as a matter of law on its claims.

The United States filed a consolidated response in opposition to the defendants' cross-motions for summary judgment and reply in support of its own motion for summary judgment on July 13, 2020.  ECF No. 75 (United States' Consolidated Response in Opposition to the Defendants' Cross-motions for Summary Judgment and Reply in Support of Summary Judgment).  The United States contends that the West Virginia tax sale process constitutes a nonjudicial sale inasmuch as the sale of the ad valorem tax liens accords with the 26 C.F.R. § 301.7425-2's nonjudicial sale specifications, the tax sale process was not limited to the sale of ad valorem tax liens and includes the transfer of title to the underlying properties, and the acquisition of title following the sale of ad valorem tax liens does not constitute a forfeiture rather than a sale.  Id. at 2-7.

The United States disputes the "superpriority" arguments propounded by Middleton and Mining Motors inasmuch as: this designation under 26 U.S.C. § 6323 only applies to holders of real property tax liens and they do not hold such liens; the defendants have waived any subrogation argument since they do not cite local law indicating that subrogation should occur as provided by 26 U.S.C. § 6323(i)(2); and assuming, arguendo, they do have priority, it would only be in the amount paid for the purchase of the tax liens. Id. at 8-10. The United States asks that it be given an opportunity to reply, "to the extent the responding defendants' are permitted to belatedly develop an actual subrogation argument." Id. at 9.

Finally, the United States contends that Middleton has waived her unjust enrichment argument, sovereign immunity bars a counterclaim for unjust enrichment, and notwithstanding these points, a separate adjudication regarding the improvements to land is unnecessary inasmuch as 26 U.S.C. § 7403(b) already requires the court to "determine the merits of all claims and liens upon the property." Id. at 10-11. In the event that the court finds that the federal tax liens continue to encumber the Middleton Properties, the United States argues that "[a]ny improvements undertaken by Middleton after the tax sale inure to the benefit of the United States because 'the federal tax lien has priority over

29

the [purchaser's] potential lien for the value of the renovations.'" <u>Id.</u> at 11 (second alteration in original) (quoting <u>U.S. v. Scheve</u>, No. CIV.A. CCB—97—3556, 1998 WL 919873, at *5 (D. Md. 1998)).[9]

Mining Motors replied on July 31, 2020, arguing that the United States' liens were rendered invalid under 26 U.S.C. § 6323(b)(6) as against the state ad valorem tax lien on the Mining Motors Properties purchased by WVTC at the sheriff's sale inasmuch as, consistent with that federal statutory provision, the West Virginia ad valorem tax lien sale process provides for the subordination of security interests filed earlier than the state ad valorem tax liens arose. ECF No. 76, at 2-5 (Mining Motors' Reply). This argument is somewhat difficult to follow, but Mining Motors appears to believe that the federal tax liens would remain invalid as against Mining Motors' interest in its properties inasmuch as it can trace title to the ad valorem tax lien that allegedly invalidated the federal liens and that notice of the sheriff's sale was unnecessary inasmuch as the federal liens were

---

[9]   It bears mention that at least two other courts have reached similar conclusions in <u>Glass v. Sec'y, Dep't of Treasury IRS</u>, 703 F. Supp. 38, 39-40 (W.D. Ky. 1988), which <u>Scheve</u> cites, 1998 WL 919873, at *5, and <u>Gregory v. United States Dep't of Treasury — IRS</u>, No. 1:12CV00042, 2012 WL 5426533, at *4 (W.D. Va. Nov. 7, 2012). However, for the reasons stated in Section III.B. of this memorandum opinion and order, the issue of foreclosure and priority as to the Middleton Properties requires further briefing.

invalid as against the state ad valorem tax liens.  See id.
Mining Motors further contends that the federal tax liens were
extinguished as a result of the United States' failure to redeem
the properties after receiving notice.  Id. at 4.  Mining Motors
argues that 26 U.S.C. § 6323(b)(6) and (i)(2) each support its
claim of priority.  Id. at 6-7.  The reply reiterates the position
that a nonjudicial sale requiring notice to the United States did
not occur.  Id. at 8-12.

In Middleton's reply, filed on July 31, 2020, she again
argues that no notice of a nonjudicial sale was necessary inasmuch
as title was transferred by forfeiture rather than a sale
divesting Mountaineer of title.  ECF No. 77, at 1-3.  Middleton
additionally asserts that if notice was required prior to the
sheriff's sale, the State of West Virginia would have been the
party responsible for providing notice inasmuch as it was the
foreclosing party and that such notice would have been possible if
the IRS had complied with W. Va. Code § 11A-3-2(b) and filed a
notice of its liens with the Office of the Sheriff of Fayette
County.  Id. at 4-5.  Middleton concedes that she does not hold a
lien in the Middleton Properties but, like Mining Motors, contends
that the federal tax liens were invalid under 26 U.S.C. § 6323 as
to the ad valorem tax liens to which she traces title.  Id. at 6-
7.

31

Middleton appears to concede that she does not maintain a separate counterclaim for unjust enrichment but states that her pleadings raise the doctrine as an affirmative defense to bar or mitigate any claims that the United States might have in the Middleton Properties.  Id. at 7-8.  She contends that the doctrine of unjust enrichment is recognized by federal and state law but submits, "Clearly the Defendant . . . by her aforesaid memorandum was only addressing the motions for summary judgment and her statement to the Court as to the doctrine of unjust enrichment and adjudication of her cross-claim against WVTC LLC would be more fully developed at the appropriate time."  Id. at 8.

WVTC filed no additional brief with regard to summary judgment.

## II.  Legal Standards

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact exists if, in

32

viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. Although the court views the evidence in the light most favorable to the nonmoving party, "that party must produce evidence that goes beyond '[c]onclusory or speculative allegations' and [must] rel[y] on more than 'a mere scintilla of evidence' to withstand summary judgment." Hodgin v. UTC Fire & Sec. Americas Corp., Inc., 885 F.3d 243, 252 (4th Cir. 2018) (first alteration in original) (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)).

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55(a) states that if a party has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered by the clerk, a plaintiff may move the court to enter default judgment against the defendant pursuant to Rule 55(b)(2). Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]" Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu

33

Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th

Cir. 1975)).  "The defendant is not held . . . to admit

conclusions of law."  Id. (quoting Nishimatsu, 515 F.2d at 1206)

(alteration in original).  "The court must, therefore, determine

whether the well-pleaded allegations in [the] complaint support

the relief sought in [the] action."  Id. (citation omitted).

"Assuming that the well-pleaded facts demonstrate that the

plaintiff is entitled to relief," the court must make an

"independent determination" regarding the appropriate remedy.

Woods v. Oxford Law, LLC, No. 2:13-6467, 2015 WL 778778, at *3

(S.D. W. Va. Feb. 24, 2015) (citing Ryan, 253 F.3d at 780-81;

S.E.C. v. Lawbaugh, 359 F.Supp.2d 418, 422 (D. Md. 2005)).

### III.  Analysis

#### A.  The Liens Encumbering the Properties

        The threshold issue with regard to both the motion for

default judgment and the motions for summary judgment is what

liens, if any, continue to encumber the four sets of properties

held by Mountaineer at the time of the November 10, 2016 sheriff's

sale of the ad valorem tax liens.

1.  The Properties with Ad Valorem Tax Liens Sold at the November
10, 2016 Sheriff's Sale

To answer this question as to the Mining Motors

Properties, Middleton Properties, and Oakland Front Half Lot No.

8, i.e., the properties with ad valorem tax liens sold to WVTC at

the November 10, 2016 sheriff's sale, the court first turns to the

process by which the tax liens were sold.

West Virginia Code § 11A-1-2 provides:

There shall be a lien on all real property for the taxes
assessed thereon, and for the interest and other charges
upon such taxes, at the rate and for the period provided
by law, which lien shall attach on the first day of
July, one thousand nine hundred sixty-one, and each July
first thereafter for the taxes payable for the ensuing
fiscal year.

The sheriff, acting as ex-officio county treasurer, collects the

taxes levied in his county and is charged with the duty to enforce

payment of delinquent taxes by means including, inter alia, the

sale of ad valorem tax liens that have arisen on properties as a

result of taxes not timely paid.  See W. Va. Code §§ 11A-1-4, 11A-

2-1, 11A-2-10.

Between October 14 and November 23 of each year, the

sheriff conducts sales of ad valorem tax liens on "unredeemed"

properties.  W. Va. Code § 11A-3-5(a).  The sheriff gives notice

by publication of these sheriff's sales, and also sends notice by

35

certified mail to certain individuals, including those who have filed a statement with the sheriff declaring that they have liens on real properties at issue.  W. Va. Code § 11A-3-2(a), (b)(2); see also W. Va. Code § 11A-3-3(a).  As a corollary, any person who has a lien on real property subject to a sheriff's sale is deemed to have waived his right to notice of the sale if he has not filed this statement with the sheriff of the relevant county.  W. Va. § 11A-3-3(a).

The highest bidder on a tax lien at a sheriff's sale receives a certificate of sale describing, inter alia, "the real estate subject to the tax lien that was sold, the total amount of all taxes, interest, penalties and costs paid for each lot or tract and the rate of interest to which the purchaser is entitled upon redemption."  W. Va. Code § 11A-3-14(b).  To secure a deed to the real estate subject to the tax lien or liens purchased at the sheriff's sale, the purchaser must "[p]repare a list of those to be served with notice to redeem and request the State Auditor to prepare and serve the notice" between August 31 and October 31 of the year following the sheriff's sale.  W. Va. Code § 11A-3-19(a)(1).  The purchaser is responsible for providing the State Auditor with the addresses of those to be served with notices.  See id.; see also W. Va. Code § 11A-3-22 ("If the address of a person is unknown to the purchaser and cannot be

36

discovered by due diligence on the part of the purchaser, the notice shall be served by publication.").

The State Auditor thereafter prepares and serves redemption notices, which specify that redemption must occur by March 31 of the following year and that a tax deed will issue to the purchaser on or after April 1 of that year absent redemption. See W. Va. §§ 11A-3-21 (providing the template used by the State Auditor for the preparation of redemption notices), 11A-3-22 (providing for service of redemption notices).

The owner of the underlying real estate "or any other person who was entitled to pay the [ad valorem] taxes" thereon "may redeem at any time before a tax deed is issued for the real estate." W. Va. Code § 11A-3-23.

> If the real estate described in the notice is not redeemed within the time specified in the notice, then from April 1 of the second year following the sheriff's sale until the expiration of the lien evidenced by a tax certificate of sale . . . the State Auditor or his or her deputy shall upon request of the purchaser make and deliver to the clerk of the county commission, a quitclaim deed for the real estate.

W. Va. Code § 11A-3-27(a). Upon obtaining such a deed, the purchaser acquires, "all right, title and interest, in and to the real estate, as was, at the time of the execution and delivery of

the deed, vested in or held by any person who was entitled to redeem . . . ."[10]  W. Va. Code § 11A-3-30(a).

As earlier noted, the record reflects that redemption notices were sent to Mountaineer, Airgas, Cecil Walker, WorkForce West Virginia, and the West Virginia State Tax Department in addition to the IRS.  Inasmuch as the sufficiency of the notice afforded these five parties does not appear to be in dispute and no redemption occurred, the court concludes that their interests were extinguished when WVTC acquired any rights, title, or interests they may have had in the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8 after the

---

[10]  This provision, which effectively extinguishes liens held by persons who fail to redeem, is subject to several exceptions, most notably that found in W. Va. Code § 11A-4-4, entitled "Right to set aside deed when one entitled to notice not notified."  This section provides that a person entitled to notice of the right to redeem who is not served with such notice and "does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property . . . may . . . institute a civil action to set aside the deed."  W. Va. Code § 11A-4-4.  Neither the United States nor any other party claims to proceed under this section.

tax deeds to these three sets of properties were conveyed to WVTC on April 1, 2018.[11]

Of course, the IRS disputes the notice it was afforded. "State law governs the divestiture of such federal tax liens 'except to the extent that Congress may have entered the field.'" Orme v. United States, 269 F.3d 991, 994 (9th Cir. 2001) (quoting United States v. Brosnan, 363 U.S. 237, 241 (1960)). "Congress has spoken clearly on the divestiture of federal tax liens in sales of property" through 26 U.S.C. § 7425. Id. Thus, it is necessary to examine the requirements for discharge of federal tax liens and notice pertaining thereto as provided by federal law.

Under 26 U.S.C. § 6321, the United States obtains a lien on all property, real or personal, belonging to a person who neglects to pay federal taxes after they are demanded in the amount of the tax assessment, "including any interest, additional amount, addition to tax, or assessable penalty, together with any

---

[11]   The court notes that Airgas' judgment recorded on December 28, 2016, and WorkForce West Virginia's lien recorded on February 13, 2017, were recorded subsequent to the November 10, 2016 sheriff's sale.  Nevertheless, these parties' interests were recorded prior to the conveyance of the tax deed, and they were served with notice of their rights to redeem, as evidenced by the notices provided by the United States.  Inasmuch as WVTC acquired the rights, title, and interests of all those who were entitled to redeem under W. Va. § 11A-3-30, their interests in the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8 were extinguished when WVTC obtained the tax deeds for those sets of properties.

costs that may accrue in addition thereto." Generally, such a lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Thus, "a properly filed government tax lien generally attaches to a delinquent taxpayer's property and rights to that property and remains attached, even if the property is transferred to a third party, until the lien is satisfied or becomes unenforceable by reason of lapse of time."[12] Russell v. United States, 551 F.3d 1174, 1179 (10th Cir. 2008) (citations omitted).

However, 26 U.S.C. § 7425 provides for the discharge of federal tax liens under certain circumstances. No party contends that the West Virginia ad valorem tax lien sale process constituted a judicial sale, which is governed by 26 U.S.C. § 7425(a). The outstanding question is whether it constitutes a nonjudicial sale under 26 U.S.C. § 7425(b).

---

[12]    No party asserts that the United States' liens have become unenforceable due to lapse of time.

According to that subsection,

(b)   Notwithstanding subsection (a) a sale of property on which the United States has or claims a lien . . . made . . . pursuant to a nonjudicial sale under a statutory lien on such property . . .
    (1)   shall, **except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); or**
    (2)   **s**hall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if--
        (A) notice of such lien or such title was not filed or recorded in the place provided by law for such filing more than 30 days before such sale,
        (B) the law makes no provision for such filing, or
        (C) notice of such sale is given in the manner prescribed in subsection (c)(1).

26 U.S.C. § 7425(b) (emphasis added).  For the purposes of 26 U.S.C. § 7425(b), "[t]he term 'nonjudicial sale' includes, but is not limited to, the divestment of the taxpayer's interest in property which occurs by operation of law, by public or private sale, by forfeiture, or by termination under provisions contained in a contract for a deed or a conditional sales contract."  26 C.F.R. § 301.7425–2(a).

    The date of a nonjudicial sale is determined by several rules, only one of which is pertinent here: "In the case of divestment of junior liens on property not resulting directly from

a public or private sale, the date of sale is deemed to be the date on which junior liens on the property are divested under local law."  26 C.F.R. § 301.7425–2(b)(3).  Further, 26 C.F.R. § 301.7425–2(c) offers examples to illustrate the provisions of 26 U.S.C. § 7425(b) and the regulation's clarification thereof. "Example 6," which the United States, Mining Motors, and Middleton each acknowledge to be relevant, provides as follows:

> The law of State Q contains a provision which permits a county to collect a delinquent tax assessment with respect to real property by the means of a tax sale of the property.  After public notice is given, a "tax sale" of the real property is conducted. Upon payment of the delinquent taxes and interest, a purchaser obtains a tax certificate with respect to the real property.  If there is no purchaser at the tax sale, the property is deemed to be bid in by the State. Because the obtaining of this tax certificate by a purchaser or State Q does not directly result in the divestment of either the owner's title or junior liens with respect to the property, the tax sale is not a nonjudicial sale described in section 7425(b).  Following the tax sale, there is a three-year period during which any person having an interest in the property may redeem the property by paying the holder of the tax certificate the amount of taxes, interest, and costs.  Unless, redeemed, the holder of the tax certificate may obtain an absolute title at the expiration of the period of redemption provided he serves a notice of the expiration of the redemption period upon the owner at least 60 days prior to the date of expiration.  Because there is no public or private sale which directly results in the divestment of junior liens on the property, the date of sale, for purposes of computing a period of time determined with reference to the date of sale, is the date on which the holder of the tax certificate obtains absolute title.

26 C.F.R. § 301.7425-2(c) Example 6; accord ECF No. 69, at 3
(Middleton citing Example 6); ECF No. 75, at 3-4 (United States
citing Example 6); ECF No. 76, at 8 (Mining Motors citing Example
6).

When considered as a whole, 26 C.F.R. § 301.7425-2
plainly indicates that the West Virginia ad valorem tax lien sale
process involves a nonjudicial sale for the purposes of 26 U.S.C.
§ 7425(b).  Middleton and Mining Motors seize upon Example 6's
sentence, "Because the obtaining of this tax certificate by a
purchaser or State Q does not directly result in the divestment of
either the owner's title or junior liens with respect to the
property, the tax sale is not a nonjudicial sale described in
section 7425(b)," to argue that no nonjudicial sale occurred with
regard to Mountaineer's real property.  ECF No. 69, at 3-4; No.
76, at 8-9.  But this language only indicates that the November
10, 2016 sheriff's sale of the ad valorem tax liens itself did not
constitute a nonjudicial sale.

It is evident from the remainder of Example 6 that a
nonjudicial sale occurs, as referenced by the example's date of
sale pronunciation, when a purchaser of a tax certificate obtains
absolute title to property after a redemption period following a
sale of an ad valorem tax lien, i.e. the date the prior owner who

failed to pay the relevant ad valorem taxes is divested of title. Thus, this example, which largely resembles the West Virginia ad valorem tax lien sale process,[13] illustrates that nonjudicial sales occurred with April 1, 2018 dates of sale when the tax deeds for the Mining Motors Properties, the Middleton Properties, and Oakland Front Half Lot No. 8 issued to WVTC and Mountaineer was divested of title to those sets of properties. See McManus v. Mikolajcyk, No. C-93-679-L, 1994 WL 759236, at *3-4 (D.N.H. Dec. 21, 1994) (finding Example 6 instructive with regard to the date of sale for a nonjudicial sale as being on the day a tax deed issued following a redemption period under New Hampshire law).

Further, the arguments Mining Motors and Middleton make with regard to WVTC's acquisition of title by forfeiture rather than nonjudicial sale are unavailing. For one, they rely on a state court decision, State v. Black Band Consol. Coal Co., 113 W.Va. 872 (1933), in support of this position that predates the codification of 26 U.S.C. § 7425 in the Federal Tax Lien Act of

---

[13] The court notes that Example 6's three-year redemption period is longer than that of the West Virginia ad valorem tax lien sale process. Additionally, the "deemed to be bid by the State" language of Example 6 does not perfectly encapsulate what occurs to properties with ad valorem tax liens not sold at a sheriff's sale, as set forth more fully below. See infra, at 53-55. These differences, however, do not substantively affect the analysis of whether the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8 were sold by nonjudicial sales.

1966, Pub. L. 89-719, 80 Stat. 1125, 1141 (1966), and does not speak to the nonjudicial sale classification provided therein as refined by 26 C.F.R. § 301.7425-2. See ECF No. 69, at 4-5 (Middleton citing Black Band Consol. Coal Co. in support of the argument that a forfeiture, rather than nonjudicial sale occurred); ECF No.71 (Mining Motors citing the same). They also cite the Ninth Circuit cases of Brookbank v. Hubbard, 712 F.2d 399 (9th Cir. 1983), and Runkel v. United States, 527 F.2d 914 (9th Cir. 1975), which are factually inapposite to this action inasmuch as they concerned the question of whether forfeitures under private land sales contracts constituted nonjudicial sales. ECF No. 71, at 6-7 (Mining Motors citing Brookbank and Runkel); ECF No. 77, at 3. At any rate, the Ninth Circuit has subsequently recognized that the rule in Runkel, also applied in Brookbank, 712 F.2d at 400-01, was superseded by statute with the passage of 26 U.S.C. § 7425(c)(4), which now classifies forfeitures of land sale contracts as nonjudicial sales. See Orme, 269 F.3d at 995.

More importantly, Mining Motors and Middleton ignore the fact that 26 C.F.R. § 301.7425-2(a) explicitly states that the term "nonjudicial sale" includes, "the divestment of the taxpayer's interest in property which occurs . . . by forfeiture . . . ." (emphasis added).

45

Based on the foregoing, the court concludes that nonjudicial sales occurred with April 1, 2018 dates of sale based on WVTC's acquisition and Mountaineer's divestment of title to the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8 on that date.  With this issue resolved, the court next turns to the notice requirements for discharge of federal tax liens corresponding to nonjudicial sales.

It should be noted that 26 U.S.C. § 7425(b)(1) provides that a nonjudicial sale with no notice thereof given to the United States can only "be made subject to and without disturbing [a federal tax] lien" if a notice of the federal tax lien at issue was "filed . . . in the place provided by law for such filing . . . more than 30 days before such sale," whereas 26 U.S.C. § 7425(b)(2)(A) provides that federal tax liens may be discharged in accordance with local law if, "notice of such lien . . . was not filed . . . in the place provided by law for such filing more than 30 days before such sale."  "The requirements for filing proper notice of a federal tax lien are set forth in [26 U.S.C.] § 6323(f) and are a matter of federal law."  TKB Intern., Inc. v. United States, 995 F.2d 1460, 1464 (9th Cir. 1993).

"In the case of real property," 26 U.S.C. § 6323(f)(1)(A)(i) prescribes that a notice of federal tax lien is to be filed, "in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated."  In West Virginia, "[n]otices of federal tax liens and certificates discharging such liens may be filed in the office of the clerk of the county commission . . . ."  W. Va. Code § 38-10-1.

The record reflects that by March 30, 2015, more than thirty days prior to the April 1, 2018 date of sale, the IRS had filed notices of all six of its tax liens with the Clerk of the County Commission for Fayette County, West Virginia as required by 26 U.S.C. § 6323(f)(1)(A)(i) and W. Va. Code § 38-10-1.  Thus, there was no failure to file notices of those federal tax liens in the proper place by the proper time.

As described above, notice of an ad valorem tax lien sheriff's sale is provided to, inter alia, persons holding liens on the underlying real property who have filed notices of such liens with the sheriff of the relevant county.  See **W. Va. Code §** **11A-3-2(b)(2).**  Despite Middleton's assertions to the contrary, that provision makes no difference to the analysis of whether the IRS' liens were discharged, for two reasons.

47

First, it bears repeating that discharge of a federal tax lien is a matter of federal law. **Orme**, **269 F.3d at 994.  As clearly indicated by 26 U.S.C. § 7425(b), the relevant place of filing is the place for filing a notice of federal tax lien fixed by** 26 U.S.C. § 6323(f)(1)(A)(i) and, in turn, W. Va. Code § 38-10-1 that directs it to be filed in the office of the relevant county commission.  In other words, **26 U.S.C. § 7425(b)'s discharge rules control, and those rules point to the two federal and state statutes last above noted that make no mention of filing notices with the office of the relevant county's sheriff.**

**Second, the effect of a failure to file a notice with the relevant sheriff's office is only the waiver of the right to notice of a sheriff's sale.  W. Va. Code § 11A-3-3;** see also **W. Va. Code § 11A-3-2.  It does not waive the right to notice of a** nonjudicial sale **as provided by federal statute, and, in fact, the November 10, 2016 sheriff's sale did not itself constitute the "nonjudicial sale" for which the United States was entitled to notice in this case.**

**With respect to the notice actually owed to the United States for the nonjudicial sales of the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8,** "[n]otice of a sale to which [26 U.S.C. § 7425(b)] applies shall be given

48

(in accordance with regulations prescribed by the Secretary [of the Treasury]) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary."  26 U.S.C. § 7425(c)(1).  The general notice of sale requirements are contained in 26 C.F.R. § 301.7425-3(a)(1), which states, in relevant part:

> a notice (as described in paragraph (d) of this section) of a nonjudicial sale shall be given, in writing by registered or certified mail or by personal service, not less than 25 days prior to the date of sale (determined under the provisions of § 301.7425-2(b)), to the Internal Revenue Service (IRS) official, office and address specified in IRS Publication 786, "Instructions for Preparing a Notice of Nonjudicial Sale of Property and Application for Consent to Sale," or any successor publication. The relevant IRS publications may be downloaded from the IRS Internet site at http://www.irs.gov.  Under this section, a notice of sale is not effective if it is given to an office other than the office listed in the relevant publication.

(emphasis added).  The United States has submitted IRS Publication 786 for the relevant period preceding the nonjudicial sales in this action, which states that a notice of sale is to be submitted to the "Collection Advisory Group Manager (for the geographical area where the Notice of Federal Tax Lien was filed.  Use Publication 4235, Collection Advisory Group Addresses, to find the Collection Advisory office where you would submit your documents.)"  ECF No. 60-22, at 2 (IRS Publication 786, Instructions for Preparing a Notice of Nonjudicial Sale of

Property and Application for Consent to Sale (Rev. 5-2016)
(emphasis omitted)).

The version of IRS Publication 4235 in effect during the
relevant period preceding the nonjudicial sales at issue clearly
states that 550 Main St., Room 3411 Cincinnati, OH 45202 is the
address of the Collection Advisory Group office associated with
West Virginia.  ECF No. 60-23, at 13-14 (Publication 4235,
Collection Advisory Group Numbers and Addresses (Rev. 11-2017)).
And although the same publication provides P.O. Box 145595, Stop
8420G, Cincinnati, Ohio 45250-5595 as the address of the
Centralized Lien Operation, this Cincinnati address is not the
same as that of the relevant Collection Advisory Group office.
Id.  Moreover, the publication advises readers to contact the
"Advisory office for state where the notice of lien is filed" for
questions regarding "Foreclosure of property – Non-judicial sales"
pertaining to Publication 786, a further indication that the
Collection Advisory Group office was the appropriate target of the
notice required to be sent to the United States.  Id.

Every court to consider the proper location to which
notice of a nonjudicial sale must be sent has found that the
notice must be sent to the appropriate Collection Advisory Group
office as listed in Publication 4235.  See Mendoza v. Cisneros,

50

No. 14–cv–3324–WJM–KMT, 2015 WL 5737129, at *4-5 (D. Colo. Oct. 1, 2015) (notice ineffective where it was sent to and received by an IRS office in Fort Collins, Colorado rather than the Denver, Colorado Collection Advisory Group office address listed in Publication 4235); United States v. Nipper, 889 F. Supp. 2d 1260, 1265, 1271 (D.N.M. 2012) (notice ineffective where it was sent to and received by the "United States Attorney's Office in New Mexico, the Attorney General of the United States, and the Secretary of the Treasury, both in Washington, D.C." rather than the Phoenix, Arizona Collection Advisory Group office listed in Publication 4235); Genesis Air, LLC v. United States, No. 1:09-CV-308-SA-DAS, 2011 WL 3296065, at *1, 5 (N.D. Miss. Aug. 1, 2011) (notice ineffective where it was sent to and received by Austin, Texas and Maestri Street, New Orleans IRS offices rather than the Poydras Street, New Orleans office listed in Publication 4235).

A unifying theme of these cases is that actual and timely notice of a nonjudicial sale afforded to the IRS will be ineffective if it is not sent to the proper office as provided by 26 U.S.C. § 7425(c)(1), 26 C.F.R. § 301.7425-3(a)(1), Publication 786, and Publication 4235.  See Mendoza, 2015 WL 5737129, at *4-5; Nipper, 889 F. Supp. 2d at 1271; Genesis Air, LLC, 2011 WL 3296065, at *5.  In the context of the requirement that notice be

given only by certified or registered mail or personal service, the Tenth Circuit has recognized the "harshness" of 26 U.S.C. § 7425(c)(1) and 26 C.F.R. § 301.7425-3(a)(1), commenting, in keeping with its holding, that the notice "rule allows the IRS to receive actual notice, as it did in the instant case, ignore the notice and still retain the right to levy upon the property." Colo. Prop. Acquisitions, Inc. v. United States, 894 F.2d 1173, 1175 (10th Cir. 1990).

In this case, the IRS sent WVTC a December 22, 2017 letter indicating that the November 10, 2016 sheriff's sale constituted a nonjudicial sale and that no notice had been given to the agency as required by law.  This information was incorrect inasmuch as the sheriff's sale itself did not constitute a nonjudicial sale, which instead culminated when the tax deeds were issued to WVTC on April 1, 2018.  Nevertheless, WVTC, through the State Auditor, sent notices that were received by the IRS on January 16, 2018 – more than twenty-five days prior to the date of sale for the relevant nonjudicial sales, i.e., the April 1, 2018 date the tax deeds issued to WVTC.  These notices were sent to the IRS address stamped on four out of six of the notices of federal tax liens filed with the Clerk of the County Commission of Fayette County, West Virginia, which is the same address of the Centralized Lien Operation office noted on Publication 4235 - PO

Box 145595 Stop 8420G, Cincinnati, Ohio 45250-5595.  However, the proper mailing address for the notices was 550 Main St., Room 3411 Cincinnati, OH 45202, as provided in Publication 4235.

It is not clear from the record whether the IRS agent supervising the Centralized Lien Operation in Cincinnati is the same as that who supervises the Collection Advisory Group that receives mail at 550 Main St., Room 3411 Cincinnati, OH 45202. The court notes, however, that the Centralized Lien Operation address has a 45250 zip code while the Collection Advisory Group address has a 45202 zip code.

But regardless of whether the IRS was afforded actual notice through the mailings to PO Box 145595 Stop 8420G, Cincinnati, Ohio 45250-5595, the applicable law indicates that the United States did not need to redeem inasmuch as the notices were required to be sent to the appropriate Collection Advisory Group address listed in Publication 4235.  See Mendoza, 2015 WL 5737129, at *4-5; Nipper, 889 F. Supp. 2d at 1271; Genesis Air, LLC, 2011 WL 3296065, at *5.  To the extent the defendants argue that it is inappropriate to consider the notices ineffective when the IRS received them at a Cincinnati office, the court notes that "[t]he remedy, if any there is to be" for the harshness of the nonjudicial sale notice regime, "must come from Congress and not

53

from the Courts." <u>Colo. Prop. Acquisions, Inc.</u>, 894 F.2d at 1175 (noting that).

Inasmuch as the notices were not sent to the correct office as provided by 26 U.S.C. § 7425(c)(1) through 26 C.F.R. § 301.7425-3(a)(1), Publication 786, and Publication 4235, the court concludes that the federal tax liens continue to encumber the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8.[14]

### 2.  Johnson Lot Nos. 62-64

The United States has indicated that the ad valorem tax lien on Johnson Lot Nos. 62-64 was not sold during the November 10, 2016 sheriff's sale and that this set of properties remains titled to Mountaineer.  There is no evidence of these assertions in the record, however.

---

[14]  Since the state law redemption period elapsed when WVTC acquired the tax deeds on April 1, 2018, the United States would have actually been allowed 120 days from that date, the date of sale, to redeem the properties.  26 U.S.C. § 7425(d)(1) ("In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary [of the Treasury] may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer.").  **However, the United States did not attempt to redeem the properties, and this additional time is accordingly not at issue.**

Additionally, the court notes that under West Virginia law, the failure to sell an ad valorem tax lien at a sheriff's sale does not end the process by which the state seeks to collect on the delinquent taxes it has assessed.  Indeed, there is a substantial procedure for this occasion provided by statute.

According to W. Va. Code § 11A-3-8,

> If no person present [at a sheriff's sale] bids the amount of taxes, interest and charges due on any real estate offered for sale, the sheriff shall certify the real estate to the Auditor for disposition pursuant to section forty-four of this article, subject, however, to the right of redemption provided by section thirty-eight of this article.

The State Auditor then certifies to a deputy commissioner a list of all lands in a certain county to be sold by auction.  W. Va. Code § 11A-3-44.

> Each tract or lot certified to the deputy commissioner pursuant to [W. Va. Code § 11A-3-44] shall be sold by the deputy commissioner at public auction at the courthouse of the county . . . within one hundred twenty days after the auditor has certified the lands to the deputy commissioner as required by [W. Va. Code § 11A-3-44].

W. Va. Code § 11A-3-45.  Further,

> If any of the lands which have been offered for sale at the public auction provided in section forty-five of this article shall remain unsold following such auction, or if the auditor refuses to approve the sale pursuant to section fifty-one of this article, the deputy commissioner may sell such lands at any time subsequent to such auction, without any further public auction or

55

> additional advertising of such land, to any party
> willing to purchase such property.

W. Va. Code § 11A-3-48.

Neither the United States nor any other party has
offered evidence as to whether Johnson Lot Nos. 62-64 have been
subjected to this procedure.  Relatedly, the United States has not
shown whether the other entities that held interests in
Mountaineer's properties, namely, Airgas, Cecil Walker, WorkForce
West Virginia, and the West Virginia State Tax Department continue
to hold liens that encumber Johnson Lot Nos. 62-64.  Thus, the
court finds summary judgment and default judgment premature as to
this set of properties.

B. Foreclosure and Priority as to the Mining Motors Properties,
   Middleton Properties, and Oakland Front Half Lot No. 8[15]

The United States asks the court to foreclose the
federal tax liens encumbering the Mining Motors Properties,
Middleton Properties, and Oakland Front Half Lot No. 8 and order
the sale of these properties with first priority to go to it in
accordance with 26 U.S.C. § 7403.  Under 26 U.S.C. § 7403(c):

---

[15]   Inasmuch as summary judgment and default judgment are
premature with regard to lien encumbrance of Johnson Lot Nos.
62-64, they are also premature with regard to foreclosure and the
relative priority of claims on that set of properties.

> The court shall, after the parties have been duly
> notified of the action, proceed to adjudicate all
> matters involved therein and finally determine the
> merits of all claims to and liens upon the property,
> and, in all cases where a claim or interest of the
> United States therein is established, may decree a sale
> of such property, by the proper officer of the court,
> and a distribution of the proceeds of such sale
> according to the findings of the court in respect to the
> interests of the parties and of the United States.  If
> the property is sold to satisfy a first lien held by the
> United States, the United States may bid at the sale
> such sum, not exceeding the amount of such lien with
> expenses of sale, as the Secretary directs.

Mountaineer's ownership interests and the interests of Airgas, Cecil Walker, WorkForce West Virginia, and the West Virginia State Tax Department in the Mining Motors Properties, the Middleton Properties, and Oakland Front Half Lot No. 8 were extinguished after WVTC acquired these sets of properties on April 1, 2018.  Moreover, it is apparent that WVTC no longer holds interests in these sets of properties inasmuch as it conveyed them by deed to Mining Motors, Middleton, and RTM.  Thus, the court must determine the relative priority of the federal tax liens and Mining Motors, Middleton, and RTM's ownership interests in their respective properties.

Federal law governs the priority of a federal tax lien. In re Restivo Auto Body, Inc., 772 F.3d 168, 172 (4th Cir. 2014) (citing Aquilino v. United States, 363 U.S. 509, 513–14 (1960)). Generally, priority is dictated by the common law principle "the

first in time is the first in right."  **Id.** (citing **United States v. City of New Britain**, 347 U.S. 81, 85 (1954)).  However, a federal tax lien is not valid "as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof" has been filed in accordance with 26 U.S.C. § 6323(f).  26 U.S.C. § 6323(a).

As earlier recognized, the United States filed notices of all six of its liens by March 30, 2015, in the Office of the Clerk of the Fayette County Commission.  Inasmuch as Mining Motors, Middleton, and RTM all acquired their respective properties after that date, their interests are subordinated to that of the United States absent an exception found in the federal statute.

Mining Motors and Middleton primarily couch their "superpriority" arguments in one such exception.  Under 26 U.S.C. § 6323(b)(6)(A),

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid . . . [w]ith respect to real property, as against a holder of a lien upon such property, if such lien is entitled under local law to priority over security interests in such property which are prior in time, and such lien secures payment of . . . a tax of general application levied by any taxing authority based upon the value of such property . . . .

Mining Motors and Middleton argue that they can trace their title to the state's ad valorem tax liens, which they say would be entitled to priority over the federal tax liens under this provision, and that this tracing entitles their interests to priority as set forth in United States v. Amos, 287 F. Supp. 886 (N.D. Ill. 1968).  ECF No. 69, at 7-8 (Middleton making this argument); ECF No. 71, at 8 (Mining Motors making this argument).

In Amos, the real property subject to federal tax liens was sold at auction by the county for unpaid county real estate taxes.[16]  Amos, 287 F. Supp. at 889.  The United States did not redeem the property, and the buyer, the Bonded Municipal Corporation, petitioned the circuit court for the issuance of a tax deed following the redemption period.  Id.  The tax deed thereafter "passed by various mesne conveyances to the intervenor" in the case, Jerome B. Bluhm.  Id.  The court concluded that:

> The intervenor, Jerome B. Bluhm, traces his title to the sale by Cook County of the real estate concerned for delinquent real estate taxes for the year 1960, and is therefore subrogated to the lien for local taxes for that year, which lien is prior to the federal tax liens of the United States, by reason of the enactment of the Federal Tax Lien Act of 1966. (Section 6323(b)(6) of the Internal Revenue Code of 1954.)

---

[16]   The case states that the property itself was sold at auction, but as the following indicates, it appears that a tax lien was sold with the actual property to be conveyed by tax deed at a later date.

**Id.** at 891.  **The court nevertheless found that the United States'**
**liens had priority for reasons irrelevant to this action.**[17]  **Id.**

As Mining Motors points out, W. Va. Code § 11A-3-30(a)
essentially recognizes the primacy of state ad valorem tax liens
inasmuch as that provision generally entitles the purchaser of a
tax lien who subsequently obtains a tax deed to "acquire all
right, title and interest, in and to the real estate, as was, at
the time of the execution and delivery of the deed, vested in or
held by any person who was entitled to redeem . . . ."  W. Va.
Code § 11A-3-30(a); ECF No. 71, at 3-4, 8.  Thus, Amos appears to
be a case that supports the proposition of Mining Motors and
Middleton that their interests have priority over those of the
United States inasmuch as they, like Bluhm, can trace title to the
ad valorem tax lien.

---

[17]    **Specifically, the Amos court found that the tax deed was**
**issued prior to the enactment of the** Federal Tax Lien Act of 1966
and that 26 U.S.C. § 6323(b)(6) (prescribing the superpriority of
real property state tax liens) enacted by that Act was not
retroactive so as to give the state circuit court jurisdiction to
issue a tax deed discharging the earlier filed federal tax liens
where the United States was entitled to sovereign immunity in the
circuit court proceeding.  Amos, 287 F. Supp. at 891.

However, the court does not find Amos persuasive.  The court in that case gave no justification for grafting a tracing theory of priority onto 26 U.S.C. § 6323(b)(6)(A), and the statute plainly states that properly noticed federal tax liens on real property are not valid only, "as against a holder of a lien upon such property," if that lien secures the payment of a tax based upon the value of the property.  Simply put, Mining Motors, Middleton, and RTM do not hold state or local tax liens contemplated by this provision.  Those liens expired in accordance with West Virginia law when WVTC acquired the tax deeds as evidenced by the tax deeds themselves, which indicate that the liens pertaining thereto no longer exist.  See ECF No. 60-12; ECF No. 60-13; ECF No. 60-14; W. Va. Code §§ 11A-3-18, 11A-3-27, 11A-3-30; see also Ballinger v. Geithner, 437 F. App'x 480, 482 (7th Cir. 2011) (rejecting the argument that an ad valorem tax lien purchaser who subsequently obtained a tax deed maintained any liens entitled to priority over federal tax liens inasmuch as the tax deed extinguished the liens under the law of Illinois where, incidentally, the Amos case arose).

This narrow reading of 26 U.S.C. § 6323(b)(6)(A) is consistent with the purpose of the provision, namely, to allow state and local governments to collect on the real property taxes they assess.  See United States v. Gen. Douglas MacArthur Senior

Village, Inc., 337 F. Supp. 955, 958 (E.D.N.Y. 1972), rev'd on other grounds, 470 F.2d 675 (2d Cir. 1972) ("In recognition of the financial plight of local governments, the American Bar Association Special Committee on Federal Liens concluded that federal tax claims should be inferior to state and local tax liens on real property . . . .  The recommendation was adopted by Congress in the Federal Tax Lien Act of 1966.") (internal citation omitted).

Further, courts generally consider this provision to subordinate federal tax liens to actual state or local real property ad valorem tax liens.  See, e.g., Western Nat'l Bank v. United States, 8 F.3d 253, 255 (5th Cir. 1993) ("Congress has established a superpriority for real property tax and special assessment liens."); Gen. Douglas MacArthur Senior Village, Inc., 470 F.2d at 678 ("26 U.S.C. § 6323(b)(6)(A) subordinates a federal tax lien to the local lien, even where the federal lien arose first, wherever state law would grant the local property tax lien a priority over a prior competing interest held by any other person.") (emphasis omitted); United States v. Meany, No. 3:19-CV-00519-MMD-CLB, 2019 WL 7875061, at *1 (D. Nev. Nov. 18, 2019) ("Washoe County's interest in the Property, by virtue of its lien for property taxes, is senior to, and has priority over, the interests of the United States. Therefore, and by virtue of 26

U.S.C. § 6323(b)(6)(A), Washoe County is entitled to priority over the federal tax liens at issue in this lawsuit."). Based on the foregoing, the court rejects the <u>Amos</u> tracing argument.

Middleton and Mining Motors also pursue an argument that appears to seize upon the "valid" language of 26 U.S.C. § 6323(b)(6)(A). ECF No. 76, at 2-3 (Mining Motors' "valid" argument); ECF No. 77, at 6-7 (Middleton's "valid" argument). Mining Motors posits that "26 U.S.C. § 6323(b)(6)(A) . . . invalidates Plaintiff's liens and thereby eliminates the notice requirements of 26 U.S.C. § 7425" inasmuch as, "[a] 'discharge' of Plaintiff's liens is not necessary when the liens are already not 'valid' pursuant to 26 U.S.C. § 6323(b)(6)." ECF No. 76, at 2-3. Middleton makes a similar argument. ECF No. 77, at 6.

However, 26 U.S.C. § 6323(b)(6)(A) only directs that federal liens are not "valid" as against state or local real property tax liens that purport to have priority over them under state law, liens which Mining Motors, Middleton, and RTM do not possess and have never possessed. Further, 26 U.S.C. § 6323(b)(6) does not provide an end-around the requirements for discharge of a federal tax lien found in 26 U.S.C. § 7425(b)(2). <u>See</u> <u>Ballinger</u>, 437 F. App'x at 482 ("[O]nly § 7425(b)(2) sets the means of extinguishing federal tax liens.") (citations omitted); <u>see</u> <u>also</u>

63

Sec. Pac. Mortg. Corp. v. Choate, 897 F.2d 1057, 1058 (10th Cir.
1990) ("Section 7425(b) of the Internal Revenue Code dictates the
method for discharging a tax lien when the underlying property is
sold."). Accordingly, the court finds that inasmuch as Mining
Motors, Middleton, and RTM do not hold liens on their respective
properties, their interests do not enjoy priority over those of
the United States under 26 U.S.C. § 6323(b)(6)(A).

Finally, the court turns to 26 U.S.C. § 6323(i)(2),
which contains a "special rule" for subrogation. That provision
holds, "Where, under local law, one person is subrogated to the
rights of another with respect to lien or interest, such person
shall be subrogated to such rights for purposes of any lien
imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2).

With respect to this subrogation rule, Mining Motors
claims that "West Virginia law does provide that if a person
discharges the liens of another, 'he will be substituted to such
liens, and accorded their priority.'" ECF No. 76, at 7 (citing
Syl. Pt. 3, Herold v. Barlow, 36 S.E. 8 (W. Va. 1900)). Mining
Motors' argument repackages the 26 U.S.C. § 6323(b)(6)(A) tracing
argument inasmuch as it asserts that WVTC discharged the ad
valorem tax liens and was subrogated to the rights of the state,
which were superior to the United States' liens, and that its

**64**

current interest should be treated similarly since that interest derives from WVTC. Id.

The full syllabus point from that case is as follows: "In a conveyance by an insolvent debtor, operating, under Code 1891, c. 74, § 2, as a preference, and standing for the benefit of all creditors, if the purchaser discharge prior liens on the property, he will be substituted to such liens, and accorded their priority." Syl. Pt. 3, Herold, 36 S.E. 8. The case concerned preferences by an insolvent debtor, which no party asserts to be relevant here, and Mining Motors takes the quoted passage entirely out of context. See id.

Mining Motors also cites the Syllabus of Freudenberger Oil Co. v. Simmons, 90 S.E. 815 (1916), in which the Supreme Court of Appeals of West Virginia held: "A deed conveying lands, unless an exception is made therein, conveys all the estate, right, title, and interest whatever, both at law and in equity, of the grantor in and to such lands." ECF No. 76, at 7. This may be so, but WVTC's ad valorem tax lien was extinguished when it obtained a tax deed, and its title to the Mining Motors Properties, as well as the Middleton Properties and Oakland Front Half Lot No. 8, was subject to the United States' federal tax liens that were not discharged under 26 U.S.C. § 7425(b)(2). Thus, Mining Motors

65

holds the title WVTC held when it conveyed the Mining Motors
Properties to it — an interest that is subject to that held by the
United States.

No persuasive arguments having been raised to the
contrary, the court finds that the "first in time is the first in
right principle" controls the priority analysis concerning the
Mining Motors Properties and Oakland Front Half Lot No. 8.  This
in turn compels the conclusion that the United States holds prime
liens in the amount of $154,714.47 plus statutory additions to the
unpaid taxes, including interest and penalties, on the Mining
Motors Properties and Oakland Front Half Lot No. 8.  Thus, the
United States is entitled to judgment as a matter of law on the
issues of foreclosure and priority against Mining Motors and RTM
and default judgment on these issues as to RTM.  Pending further
order of the court, the United States will be entitled to
foreclose and sell the properties, with the proceeds to be
distributed: first to the United States and second to Mining
Motors as to the Mining Motors Properties; and first to the United
States and second to RTM as to Oakland Front Half Lot No. 8.

As for Middleton, the court concludes that summary
judgment with regard to foreclosure and priority is premature.
Middleton has claimed throughout this proceeding that should the

United States be entitled to judgment, she is entitled to a set-off for the improvements she has made thereto, through the doctrine of unjust enrichment or otherwise.  She has offered evidence that she expended, variously, more than $232,300.00 or more than $241,000.00 to construct a vehicle collision repair business on the Middleton Properties.

She has also cited, albeit without any discussion, the case of Somerville v. Jacobs, 170 S.E.2d 805 (W. Va. 1969), for the proposition that unjust enrichment may be an applicable doctrine in this case.  ECF No. 77, at 8-9.  In that case, the Supreme Court of Appeals of West Virginia approved the use of the doctrine of unjust enrichment in the context of an individual who, in good faith, mistakenly improves the land of another.  Somerville, 170 S.E.2d at 813.  The court held:

> an improver of land owned by another, who through a
> reasonable mistake of fact and in good faith erects a
> building entirely upon the land of the owner, with
> reasonable belief that such land was owned by the
> improper [sic, improver], is entitled to recover the
> value of the improvements from the landowner and to a
> lien upon such property which may be sold to enforce the
> payment of such lien, or, in the alternative, to
> purchase the land so improved upon payment to the
> landowner of the value of the land less the improvements
> and such landowner, even though free from any
> inequitable conduct in connection with the construction
> of the building upon his land, who, however, retains but
> refuses to pay for the improvements, must, within a
> reasonable time, either pay the improver the amount by
> which the value of his land has been improved or convey

> such land to the improver upon the payment by the
> improver to the landowner of the value of the land
> without the improvements.

Id.

It remains to be seen whether this doctrine applies to Middleton's present circumstances.  However, it is noted that the First Circuit has rejected the argument that 26 U.S.C. § 6323(i)(2) necessarily precludes consideration of common law doctrines, in particular, unjust enrichment, in a priority analysis where they have created liens under state law. Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1235 (1st Cir. 1996) ("To the contrary, federal courts should presume applicability of state common law doctrines in determining the status of state created liens.").

Further, the court observes that Somerville considered the applicability of West Virginia's Betterment Statute, W. Va. Code § 55-5-1, et seq., to the facts of that case.  Somerville, 170 S.E.2d at 807.  The first section of that statute states as follows:

> Any defendant against whom a decree or judgment shall be
> rendered for land, where no assessment of damages has
> been made under the preceding article [addressing
> ejectment], may, at any time before the execution of the
> decree or judgment, present a petition to the court
> rendering such decree or judgment, stating that he or
> those under whom he claims, while holding the premises
> under a title believed by him or them to be good, have
> made permanent improvements thereon, and praying that he
> may be allowed for the same the fair and reasonable
> value thereof; and thereupon the court, if satisfied of
> the probable truth of the allegation, shall suspend the
> execution of the judgment or decree, and impanel a jury
> to fix and assess the damages of the plaintiff (if any)
> and the value of the improvements (if any) so made by
> the defendant.

W. Va. Code § 55-5-1.  No party has discussed the potential

applicability of the Betterment Statute, but it warrants briefing

with regard to Middleton's set-off arguments.

Based on the foregoing, the court finds summary judgment

to be premature with regard to foreclosure and priority as to the

Middleton Properties.  And inasmuch as Middleton has requested,

and the United States has acquiesced, to further briefing on the

issues of subrogation and set-off, the parties will brief these

issues according to the schedule set forth by separate order.

### C.  Middleton's Crossclaim for Fraud Against WVTC

Middleton maintains that her crossclaim for fraud against WVTC remains to be adjudicated.  Inasmuch as the merits of the fraud claim may depend on those of the claims involving the United States examined herein, the court recognizes that adjudication of the fraud claim must necessarily come subsequent to that of those claims.  However, the court finds it necessary at this stage to set a schedule for adjudicating the fraud claim notwithstanding the fact that foreclosure and priority issues concerning the Middleton Properties remain.  Accordingly, the court shall issue a schedule for disposition of this claim by separate order.

### IV.  Conclusion

In summary, the United States' six federal tax liens continue to encumber the Mining Motors Properties, Middleton Properties, and Oakland Front Half Lot No. 8, and constitute a first lien thereon.  Neither Mountaineer nor WVTC continue to hold an interest in these properties.  Additionally, the other interests that previously encumbered these sets of properties, i.e., those held by Airgas, Cecil Walker, Workforce West Virginia, and the West Virginia State Tax Department, have been discharged. The United States and Mining Motors continue to hold interests in

the Mining Motors Properties, the United States and Middleton
continue to hold interests in the Middleton Properties, and the
United States and RTM continue to hold interests in Oakland Front
Half Lot No. 8.

The court finds summary judgment and default judgment
premature as to Johnson Lot Nos. 62-64.  The court makes no
findings with respect to whether the United States, Mountaineer,
Airgas, Cecil Walker, WorkForce West Virginia, or the West
Virginia State Tax Department hold any interests therein.

Inasmuch as the United States' six liens have priority
over the interest of Mining Motors in the Mining Motors Properties
as well as the interest of RTM in Oakland Front Half Lot No. 8, it
shall be ordered in due course that the United States' six liens
thereon be foreclosed and the properties sold with the sale
proceeds to be distributed first to the United States.  The court
makes no findings on foreclosure and priority with respect to the
Middleton Properties pending further briefing from Middleton and
the United States.

Accordingly, it is ORDERED that:

1.   The United States' motion for summary judgment (ECF
No. 60) be, and it hereby is, GRANTED to the extent set forth
herein and otherwise DENIED without prejudice.

71

2.   The United States' motion for default judgment (ECF No. 62) be, and it hereby is, GRANTED to the extent set forth herein and otherwise DENIED without prejudice as to its claims involving Johnson Lot Nos. 62-64.  Further, to the extent the Clerk's entry of default judgment against Mountaineer (ECF No. 67) does not already entitle the United States to judgment in the amount of $154,714.47, plus statutory additions to tax, including interest, accruing after April 20, 2020, the motion for default judgment is GRANTED.

3.   Middleton's motion for summary judgment (ECF No. 68) be, and it hereby is, DENIED to the extent set forth herein and DENIED without prejudice with respect to foreclosure and priority.

4.   Mining Motors' motion for summary judgment (ECF No. 70) be, and it hereby is, DENIED.

5.   WVTC's motion for summary judgment (ECF No. 73) be, and it hereby is, DENIED.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER:  March 8, 2021

John T. Copenhaver, Jr.
Senior United States District Judge